Duplicate copy to ensure receipt

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                  Case No. 22-cv-3489 (KMW)
            -against-
                                                  Case No. 19-cr-178 (KMW)

WOLFE MARGOLIES,
        Defendant/Movant.
------------------------------------------------------------------X
```

## REPLY TO GOVERNMENT'S RESPONSE TO MOTION UNDER U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT A SENTENCE

COMES NOW the Defendant, appearing *pro se*, and responds to the Government's Response to the underlying motion to set aside his conviction and sentence pursuant to 28 U.S.C. § 2255.

## BACKGROUND

On April 27, 2022, the Movant, Wolfe Margolies, filed a motion before the Hon. Allyne R. Ross to set aside his conviction and sentence pursuant to 28 U.S.C. § 2255. After a careful review of the petition and the extensive supporting Memorandum of Law, the Court, on May 6, 2022, "having concluded that the motion brought under 28 U.S.C. 2255 should not be summarily dismissed as being without merit," ordered the Government to reply to "file an answer or other pleadings in response to the motion" within sixty days.

The Government filed its response in a letter to the Court on July 1, 2022. ECF 53. The Court granted the Movant thirty days from the date on which Movant was served with

Government's answer to file a response. The Movant received service from the Government on July 11th, 2022. The Movant is filing this reply accordingly.

## REJOINDER

It is unnecessary to restate the claims made in the initial motion, but it is worth noting that the Government, in its boilerplate response, is wholly unresponsive to the unique merits of the case that passed initial muster with the Court. The Government gives extensive space to a straw man argument; the Movant is not challenging the validity of the plea procedure but rather the damaging Plea Agreement. ECF 53 at 2-3; *see* ECF 50, Memorandum of Law at 2 ("Movant's failure to have been properly advised as to the full consequences of his guilty plea pursuant to the Plea Agreement, most notably the degree to which the Sentencing Guidelines would be inflated relative to a guilty plea sans Plea Agreement or proceeding to trial with an affirmative defense to the second count, requires that his conviction and sentence be vacated due to ineffective assistance of counsel"). See also *Lafler v. Cooper*, 132 S.Ct. 1376 (2012); *Missouri v. Frye*, 132 S.Ct. 1399 (2012); *Hill v. Lockhart*, 474 U.S. 52 (1985). The attempt to muddy the waters should not be rewarded.

Perhaps more troubling, the Government also makes significant misrepresentations in its Response. These misrepresentations serve to confuse the issues at hand, obscure the scope of the ineffective representation by counsel, and assert causal links when none were proven.

Crucially, the Government makes a material factual misstatement in its description of the circumstances leading to the death of the individual (hereinafter "the Victim") who died from an apparent heroin overdose on February 3, 2018. The Government claims that the Victim had communicated with the Movant "right before" his death. ECF 53 at 2. This is not an off-hand

2

misrepresentation; the Government uses misleading language elsewhere in its Response when it claims that "shortly after" a heroin delivery, the Victim died, and that text messages were exchanged "right before" the Victim's overdose. ECF 53 at 3, 6. And this is a pattern that presented itself at the change of plea hearing as well; counsel's failure to object to this misleading language at the time is further evidence of his deficiency. See, e.g., Transcript of Change of Plea Hearing before Magistrate Judge Robert W. Lehrburger (June 24, 2019), at 21 (claiming, misleading, that the Movant was "in communication with the victim referencing a delivery of narcotics immediately prior to the death"). The Government cites the Presentence Report ("PSR") to support this description, but is glossing over the details and misrepresenting what the PSR records. Indeed, the texts were exchanged at 6:12 PM on February 2, *at least eighteen hours* prior to the Victim's death. PSR ¶ 17.

The Government also misrepresents the manner in which "law enforcement officers discovered a video file constituting child pornography" on the Movant's cell phone. ECF 53 at 2. The Movant had long before deleted the video he had received; indeed, the law enforcement officers discovered it in a deleted cache. PSR ¶ 24-27.

As noted in the Movant's Memorandum, the law governing ineffective assistance of counsel is both well-known and well-defined. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984), cited in Memorandum at 3-4. Despite the Government's claims to the contrary, the Movant easily meets the first prong of the *Strickland* test. Relying on a single quotation from *Missouri v. Frye*, supra, 132 S.Ct. 1399 (2012), the Government suggests that defense counsel's "duty" is simply to "communicate formal offers from the prosecution." ECF 53 at 6. Defense counsel plainly has more than the "duty to communicate formal offers"; counsel also has a duty to consider the relative strength of the offer both to other potential offers and to a simple plea of guilty to the

3

Indictment. The Movant does not have to show that there is a reasonable probability that he would not have pleaded guilty and gone to trial, but that *he would not have pleaded guilty to the plea agreement but instead to the Indictment.* This is explained in detail in the Petition and the Memorandum of Law—see, e.g., Memorandum of Law at 9-10—and ignored entirely by the Government in favor of a single quotation from *Frye* that is lacking all context.

As the Supreme Court noted elsewhere in *Frye*, the "simple reality" is that "the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant," and, in fact, "The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages." *Frye*, 132 S.Ct. at 1407 (brackets and emphasis in original and citations omitted). The Supreme Court in *Frye* concisely explains why Movant's counsel was deficient in the immediate case: "defense counsel has the duty to communicate formal offers from the prosecution *to accept a plea on terms and conditions that may be favorable to the accused.*" *Frye* at 145 (emphasis added).

Even by the Government's exceedingly narrow representation of a defense attorney's responsibilities to his client, counsel failed the Movant because he urged him to accept a Plea Agreement on terms that were expressly *unfavorable* to the accused. As explained in detail in the Memorandum, and as the Government fails to address in its own Response, had the Movant pled guilty to the two-count indictment *without* a Plea Agreement, the base offense level for the heroin count would have been 12 (not 38), and when combined with the offense level for the child pornography, Movant's total offense level with acceptance of responsibility would have been 25, with a corresponding sentencing range of 57 to 71 months. In satisfaction of the first prong of the

4

*Strickland* test, counsel plainly "failed to provide objectively reasonable advice" to the decision to plead guilty pursuant to the plea agreement. *Davis v. United States*, No. 18-cv-01308, 2019 WL 3429509, at *5 (S.D.N.Y. 2019).

The Government describes the Movant's easily demonstrated claims as "self-serving assertions." ECF 53 at 6. The Movant is simply describing facts; what is self-serving is the misrepresentation of the record in the Response. To reiterate, without obtaining an expert opinion, counsel could not provide objectively reasonable advice whether to accept the plea agreement. The plea agreement stipulated that the Movant was directly responsible for the death of the Victim. Counsel did not even bother to request a *Fatico* hearing, let alone the advice of an independent toxicologist.

Text messages sent at least eighteen hours prior to a death do not establish causality—rather, they show a gap approaching a day's length, which is precisely why an expert opinion was needed. Memorandum of Law at 8-9. The Government says that the Movant's view that the Government could not have proven causality at a *Fatico* hearing is "simply speculative," but that is *exactly* why an expert was needed, and precisely why counsel's representation was deficient. ECF 53 at 6. The Government's proof then, and indeed in its Response, is not remotely fulsome, despite its description otherwise.[1] A *Fatico* hearing and an evaluation by an expert were needed. Counsel failed to request either.

Having not provided any proof of causality, the Government then claims that, at the time of his plea, "the defendant has offered statements that detail his involvement with the offense,"

---

[1] Indeed, even at the change of plea hearing, the Government did not detail any evidence that proved causality. "[W]ith respect to the victim that was referenced in the allocution the government would offer phone records showing communications between the defendant and the victim, as well as the medical records showing that the cause of the victim's death was acute heroin intoxication." Transcript at 22. This, of course, does not prove that the acute heroin intoxication was caused by the same heroin sold by the Movant nearly a full day prior to the Victim's death.

which, the Southern District has found elsewhere, should "carry a strong presumption of verity." ECF 53 at 7, citing *Rosa v. United States*, 170 F. Supp. 2d 388, 402 (S.D.N.Y. 2001). This is a gross misrepresentation of the Movant's actual statements at his change of plea hearing.

> THE DEFENDANT: During the period described in the indictment, I agreed with others to distribute controlled substances, including those containing heroin, to retail customers of Ekin Erkan.
> I have reviewed those portions of the complaint which alleges that on February 2, 2018, I delivered a controlled substance containing heroin to an individual identified as Victim-2, and that this individual subsequently died after having ingested some of the heroin included in that delivery.
> I do not have a specific recollection of this delivery. However, I have reviewed with my attorney the relevant portions of the complaint, an affidavit in support electronic eavesdropping authority on certain cell phones, and the death certificate prepared by the office of the chief medical examiner. Based upon my review of these materials and my conversations with my attorney, I am prepared to admit the following:
> I recall that on February 2, 2018, I was the individual who possessed the cell phone described in the complaint as the "Hope 2549 phone";
> I recall that during the period, I engaged in deliveries of controlled substances to retail customers of Ekin Erkan;
> That on February 2, 2018, Victim-2 placed an order for three bundles of heroin to me on my cell phone;
> That shortly after this delivery, the deceased stopped making outgoing calls or sending text messages from his cell phone;
> That on February 3, 2018, Victim-2's roommate discovered the body of the deceased. In close proximity to the deceased were two open glassines and 19 unopened glassines.
> That according to the death certificate prepared by the office of the chief medical examiner, on February 3, 2018 at 6:12 p.m., Victim-2 was pronounced dead of acute heroin intoxication.

Transcript at 17-19. At no point did the Movant acknowledge causality. And, in fact, the Movant specifically noted that he had no memory of the sale in question.

6

The Government entirely fails to substantively address the argument that counsel failed to pursue an affirmative defense against the charge of a single count of possession of child pornography. Instead, it misrepresents the argument as "speculative." ECF 53 at 7. This is untrue. It is not speculative because it is not fact-based. It is a pure statement of the law. Pursuant to 18 U.S.C. § 2552(c)(1) specifically recognizes an affirmative defense used if the defendant "[p]ossessed less than three matters containing child pornography." (The Movant also has grounds for a second affirmative defense, as he "[p]romptly took reasonable steps to destroy each item containing child pornography.")

No reasonable person would describe the Plea Agreement which the counsel presented to the Movant as "favorable," despite claims to the otherwise in the Government's Response. ECF 53 at 7. A simple plea *without an agreement* would have resulted in lesser Sentencing Guidelines. The Movant's claim is simple and straightforward. The Movant's dissatisfaction with his counsel's deficient performance is not a non-specific instance of sour grapes. Rather, it is based on specific shortcomings. The Movant's attorney failed to pursue a break in causality via a report by an expert, and to advise the Movant that he had an affirmative defense against the child pornography charge, both of which would either have led to trial and acquittal, or to a plea to the indictment and a far lower sentence. Plainly, counsel's deficiency led to prejudice.

So, yes, counsel's "representation fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." The Movant demonstrated both in his Memorandum. *Strickland*, 466 U.S. at 694.

WHEREFORE, Movant respectfully maintains that counsel's representation was ineffective in violation of his Sixth Amendment right to effective assistance of counsel during the

plea-process stage of the proceedings and, as a result, prays that this Honorable Court vacate his conviction and sentence or provide any other relief it deems necessary and proper.

Respectfully submitted,

WOLFE MARGOLIES
Defendant/Movant, *Pro Se*

# PRIORITY MAIL EXPRESS

EI 132 784 585 US

**FLAT RATE ENVELOPE**
ONE RATE ■ ANY WEIGHT

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)
Wolfe Nwagbaras 37756-034
FCI Danbury
33 1/2 Pembroke Rd
Danbury, CT 06811

**DELIVERY OPTIONS (Customer Use Only)**
☐ SIGNATURE REQUIRED
☐ No Saturday Delivery
☐ Sunday/Holiday Delivery Required

TO: (PLEASE PRINT)
Magistrate Barbara Moses
US Courthouse
500 Pearl St
New York, NY
ZIP+4: 1 0 0 0 7 - 1 3 1 2

**PAYMENT BY ACCOUNT**

**ORIGIN (POSTAL SERVICE USE ONLY)**

| 1-Day | 2-Day | Military | PO ZIP Code | Scheduled Delivery Date | Postage |
|---|---|---|---|---|---|
| | | | 12498 | 8/6/22 | $26.95 |

Date Accepted: 8/5/22
Time Accepted: 12:00 PM
Scheduled Delivery Time: 6:00 PM
Insurance Fee
Return Receipt Fee
Weight: 5 ozs ☐ Flat Rate
Acceptance Employee Initials: MS
Total Postage & Fees: $26.95

**DELIVERY (POSTAL SERVICE USE ONLY)**
Delivery Attempt / Time / Employee Signature
Delivery Attempt / Time / Employee Signature

LABEL 11-B, MAY 2021   PSN 7690-02-000-9996

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

◄ PEEL FROM THIS CORNER

To schedule free Package Pickup, scan the QR code.

USPS.COM/PICKUP

08/05/22